## McFarland v Chesapeake & Ohio Railway Company.

(Decided November 2, 1917.)

### Appeal from Boyd Circuit Court.

1. Master and Servant—Interstate Commerce—Federal Employers' Liability Act.—As station water tanks owned by an interstate railroad company are used in interstate, as well as intrastate commerce, an employe injured by the falling of a scaffold upon which he was standing while repairing and painting a station tank of such railroad company, if caused by the negligence of its foreman in furnishing him a defective rope for supporting the scaffold, the breaking of which caused it to fall, is entitled to maintain an action under the Federal Employers' Liability Act to recover of the railroad company damages for his injuries.

2. Master and Servant—Safe Place to Work—Negligence.—In such state of case it was the duty of the railroad company to use ordinary care to furnish the employe a reasonably safe place to work and reasonably safe appliances with which to perform it; and if his injuries resulted from the negligence of the railroad company's foreman in furnishing him a defective and unsafe rope for supporting the scaffold, which broke and caused the scaffold to fall, the employe, in the matter of receiving his injuries, did not assume the risk incident to his use of the scaffold, unless he knew of the

defective and unsafe condition of the rope, or its defective and unsafe condition was so obvious that a person of ordinary intelligence situated as he was must have known it, and, notwithstanding such knowledge or means of knowledge, he continued the use of the scaffold.

3. Master and Servant—Assumption of Risk—Damages.—Although the employe may not have known that the rope was not reasonably safe to support the scaffold, and its defective and unsafe condition was not so obvious that a person of ordinary intelligence, situated as he was, could have discovered it, if on the day of the accident, and previous to its occurrence, he was informed by the railroad company's foreman that the rope was an old one and might break and cause someone to get hurt if more than two persons got on the scaffold at one time, but notwithstanding such information he did get upon the scaffold with two of his fellow workmen and thereby caused the rope to break and the scaffold to fall and produce his injuries, he did assume the risk incident to such use of the scaffold, and in such event would not be entitled to recover of the railroad company damages.

4. Master and Servant—Assumption of Risk—Federal Employers' Liability Act.—The assumption of risk is a rule of the common law, that is based on contract, and, by implication, on a servant's act in voluntarily exposing himself to danger. The fact that an injured employe of a railroad company sues under the Federal Employers' Liability Act to recover of the railroad company for his injuries, will not prevent the latter from relying upon the defense of assumption of risk, if the injuries were caused by the breaking of a defective rope supporting a scaffold upon which the employe was standing in repairing or painting a station water tank. The federal statute only abolishes the assumption of risk as a bar to an action against a railroad company by the employe for injuries attributable to defective appliances upon or connected with the trains of the railroad company, and neither a water tank, rope, nor scaffold is an appliance within the meaning of the statute.

5. Master and Servant—Res Ipsa · Loquitur—Negligence—Question for Jury.—While, ordinarily, the doctrine of res ipsa loquitur does not apply as between master and servant, except in a modified form, where the accident causing injury to the servant results from defective conditions, which can be explained upon no reasonable assumption other than negligence, and circumstances appear, independent of the accident itself, indicating negligence on the part of the master, in such event there is sufficient proof to authorize the submission of the question of the latter's negligence to the jury.

JOHN T. DIEDERICH for appellant.

WORTHINGTON, COCHRAN & BROWNING and P. K. MALIN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Reversing.

In this action brought by the appellant, H. B. McFarland, against the appellee, Chesapeake & Ohio Railway Company, to recover damages for injuries to his person, caused by the falling of a scaffold upon which he was at work as a painter and employe of the latter, the jury, upon the trial and at the conclusion of all the evidence, in obedience to a peremptory instruction from the court, returned a verdict in behalf of appellee. Appellant complains of the judgment entered upon that verdict and has appealed.

According to the evidence, appellant had been in the employ of appellee as a painter upon its water tanks and bridges for about a month previous to the accident. In the performance of his work of painting water tanks it was his duty to replace, or assist in replacing, defective hoops that surrounded them. On May 14, 1914, while appellant and two of his fellow servants were engaged in placing hoops upon appellee's water tank located at Foster, Bracken county, and working under the direct supervision of one Hammonds, appellee's foreman, the swinging scaffold upon which they were standing fell to the ground, because of the breaking of one of the ropes which supported it. The fall of nine or ten feet to the ground produced the injuries received by appellant.

The crew of painters was composed of eight or nine men, besides the foreman, Hammonds, and the scaffold had been suspended and adjusted to the tank by three of these men, but appellant was not one of them. The scaffold was suspended by ropes, the upper ends of which were secured at the top of the tank and the lower ends looped around boards suspended on the sides of the tank. The rope, the breaking of which caused the fall of the scaffold, was a three-quarter inch rope, which supported one end of the scaffold. The only evidence introduced in appellant's behalf was furnished by the testimony of himself and Welburn, a fellow employe. Appellant testified that he had never tested or been required to test the broken rope and did not know of its unsafe condition, or that there was any danger attending its use; that he believed the scaffold a safe place upon which to work, and that there were two persons besides himself on the scaffold when it fell.

Welburn testified that the rope was a three-quarter inch rope of the size and kind customarily used by the crew of which he and appellant were members for swing-

ing the scaffold upon which they stood while repairing and painting appellee's water tanks; that he inspected the rope after it broke, but did not give it a thorough examination; that it was an old rope and had a "dead" or "smoked" look, where it had been handled, and that the rope was in use by the crew for swinging the scaffold when he entered appellee's service, which was about a month prior to the accident, and was continually used for the purpose indicated from that time down to the occurrence of the accident; that he did not know the rope was unsafe for the use to which it was put, but heard Hammonds, appellee's foreman, tell the crew on the day of the accident, and before its occurrence, that not over two men should get on the scaffold at one time; that it was an old line and might break and cause somebody to get hurt. Appellant was present when this statement was made by Hammonds, but the witness was unable to say whether or not he heard the statement. Appellant, upon being recalled, said that if the above statement was made by Hammonds he did not hear it.

The only evidence introduced by appellant as to the nature of his injuries was furnished by his own testimony; according to which it appears that he fell from the scaffold upon his breast and face, and was temporarily rendered unconscious by the fall; that he got a ragged cut on the nose that penetrated the flesh and went through the cartilaginous substance within the nose, received a bruise on the hip and a blow on the back of his head from a board, but that the only permanent injury was that sustained to his nose; the wound received thereon having so badly healed as to obstruct the air passage on that side of the nose and greatly interfere with his breathing. He also testified that he yet suffers from this wound, which has produced a chronic tenderness of the nose that causes it to bleed frequently. He was treated by appellee's physician, Dr. Salmon, and also by his own physician, Dr. Brown, but only lost eleven days from work, at the expiration of which he returned to appellee's service as a member of the same crew of painters, and continued therein until December 1, 1914.

The only witness introduced by the appellee was Dr. Salmon, according to whose testimony appellant's injuries consisted of a bruise on his right hip, one on his elbow, and a laceration of his nose an inch long, which penetrated the skin on the right side of the nose above and cut through the cartilaginous portion of the nose

for a distance of about a quarter of an inch, causing a ragged cut, principally on the outside. In the opinion of the witness the injury to the nose was not permanent, and could not have produced the later bleeding of which appellant complains, or any material obstruction to his breathing.

It was, in substance, alleged in the petition that appellant's injuries were caused by the negligence of appellee in failing to provide him a reasonably safe place to work and reasonably safe appliances for doing the work; that is, that the falling of the scaffold was caused by the breaking of a defective and rotten rope negligently furnished by appellee for supporting it. Furthermore, that the defective condition of the rope and the fact that the scaffold by reason thereof was defective, insecure and unsafe for the purpose of supporting appellant and his fellow workmen while painting and repairing the water tank, was known, or, by the use of ordinary care, could have been known, to the appellee and its other employes superior in authority to appellant, but was not known to appellant.

The answer of appellee, in addition to traversing the allegations of the petition, alleged: (1) That appellant was injured by the negligence of his fellow servants; (2) that the materials used in the scaffold, including the rope in question, were suitable and safe; (3) that appellant assumed the risk of injury as a part of the terms of employment; and (4) that appellant, in the matter of receiving his injuries, was guilty of contributory negligence, but for which they would not have been received. The issues were completed by the filing of appellant's reply controverting the affirmative matter of the answer.

It is the contention of appellant that while negligence must always be proved or the facts established from which it may clearly be inferred, as the facts here presented show that the thing causing his injuries was under the control of appellee's foreman and the accident was such as, in the ordinary course of such work as that in which appellant was engaged, would not have happened if reasonable care had been used by appellee's foreman, these facts, in the absence of explanation by the appellee, afford sufficient evidence that the accident arose from want of care on its part. In other words, it is argued by appellant that under the doctrine *res ipsa loquitur* his evidence showed a *prima facie* right to have his case submitted to the jury. The action was brought under the

Federal Employers' Liability Act, because the appellee is an interstate common carrier and the water tank in question and others owned and maintained by it on and along its right of way for supplying its trains with water, are as much used in interstate as intrastate commerce. It is conceded by appellee that the action was properly brought under the Federal statute, but insisted by its counsel that the doctrine of *res ipsa loquitur* cannot be applied under the statute.

It goes without saying that it was the duty of appellee to use ordinary care to furnish appellant a reasonably safe place to work, and reasonably safe appliances with which to perform it, but under the Federal statute the right of the latter to recover damages for the injuries complained of must depend upon whether they resulted from the negligence of appellee in furnishing him a defective and unsafe rope for supporting the scaffold. If there was such negligence on the part of appellee, appellant, in the matter of receiving the injuries, cannot be said to have assumed the risk incident to his use of the scaffold, unless he knew of the defective and unsafe condition of the rope, or its defective and unsafe condition was so obvious that a person of ordinary intelligence, situated as he was, must have known it, and, notwithstanding such knowledge or means of knowledge, he continued the use of the scaffold. L. & N. R. R. Co. v. Strange's Admx., 156 Ky. 439; Interstate Coal Co. v. Shelton, 160 Ky. 40; Pine Mountain Manufacturing Co. v. Bishop, 169 Ky. 575; Williamson v. Williamson's Admr., 156 Ky. 226; New Bell Jellico Coal Co. v. Oxendine, 155 Ky. 840; L. & N. R. R. Co. v. Patrick, 167 Ky. 118.

On the other hand, although appellant may not have known that the rope was not reasonably safe to support the scaffold, and its defective and unsafe condition was not so obvious that a person of ordinary intelligence, situated as he was, ought to have discovered it, if on the day of the accident and previous to its occurrence, he was informed by appellee's foreman, Hammonds, in substance, that the rope was an old one and might break and cause somebody to get hurt if more than two persons got on the scaffold at one time, but notwithstanding such information he did get upon the scaffold with two of his fellow workmen, which caused the rope to break and the scaffold to fall and produce his injuries, he did assume the risk

incident to such use of the scaffold and in such event would not be entitled to recover of appellee damages.

The assumption of risk is a rule of the common law and is based on contract and, by implication, on a servant's act in voluntarily exposing himself to danger. Wilson v. Chess & Wymond Co., 117 Ky. 567; L. & N. R. R. Co. v. McMillen, 142 Ky. 257; Dow Wire Works v. Morgan, 29 R. 854; Cumberland Tel & Tel. Co. v. Graves' Admr., 31 R. 927; Fuller v. I. C. R. R. Co., 138 Ky. 42; L. H. & St. L. Ry. Co. v. Wright, 170 Ky. 230.

The fact that the action was brought under the Federal Employers' Liability Act does not prevent the appellee from relying upon the defense of assumption of risk. That statute only abolishes the assumption of risk as a bar to an action against a railroad company by an employe for an injury attributable to defective appliances upon or connected with the trains of the railroad company; and neither a station water tank, rope nor scaffold is an appliance within the meaning thereof. Hence, the common law rule with respect to the employe's assumption of risk of injury from a defective appliance, governs an action under the Employers' Liability Act where such appliance is not embraced by the terms thereof. Seaboard A. L. R. Co. v. Horton, 233 U. S. 492; Hough v. Texas & P. R. Co., 100 U. S. 213; Choctaw, O. & G. R. Co. v. McDade, 191 U. S. 64.

Coming now to the question whether there was any proof of negligence on the part of appellee furnished by the evidence of appellant, we find this to be the situation: There was evidence to the effect (1) that appellant was injured by the falling of the scaffold furnished by appellee for his use; (2) that the scaffold was caused to fall by the breaking of a rope also furnished by appellee, the breaking of which, as well as its ''dead'' or ''smoked'' appearance and the length of time it had been in use, served to show that it was defective and unsafe for the purpose to which it was applied; (3) that appellant did not know the rope was defective or unsafe; (4) that there was an admission by appellee's foreman that he had knowledge of the defective and unsafe condition of the rope, manifested by his admonition to the crew on the day of the accident, and shortly before it happened, that it would only sustain the weight of the scaffold and two men. The foregoing facts, together with the further fact that the accident was such as, in the ordinary course of business or events, does not happen if reasonable care

is used, were sufficient, in the absence of explanation by appellee, to afford such evidence of negligence on its part as entitled appellant to have the case submitted to the jury. In Louisville & Nashville R. R. Co. v. Allen's Admr., 174 Ky. 736, which was an action under the Federal Employers' Liability Act, we held that though the strict doctrine of *res ipsa loquitur* does not apply as between master and servant, except in a modified form, where the accident results from defective- conditions which can be explained upon no reasonable assumption other than negligence, and circumstances appear, independent of the accident itself, indicating negligence on the part of the defendant; in such event there is sufficient proof to authorize the submission of the question of the defendant's negligence to the jury.

In Thomas v. National Concrete Construction Co., 166 Ky. 572, quoted with approval in the opinion of the case, *supra,* we said:

"While some courts take the position that the doctrine of *res ipsa loquitur* never applies in a case of master and servant, yet it is generally held that the doctrine does apply in such a case, but in a more restricted sense than in a case of carrier and passenger, because of the difference in the degree of care manifested and in the character of defenses that may be made. . . . A master is not required to furnish the servant absolutely safe appliances with which to work. He discharges the full measure of his duty when he exercises ordinary care to furnish appliances which are reasonably safe. When, therefore, the servant seeks to recover for an injury growing out of defective appliances, the mere fact that a piece of machinery breaks is not of itself sufficient to make out a *prima facie* case. It must, therefore, appear that the master knew of the defective condition of the machine, or could have known of it by the exercise of ordinary care. Therefore, it is generally held in a case of master and servant that the inference of negligence is deducible, not from the mere happening of the accident, but from the attending circumstances. . . . In Sherman and Redfield on Negligence, section 59, the rule, which has frequently been quoted by courts with approval, is stated as follows: 'It is not that in any case negligence can be assumed from the mere fact of an accident and an injury; but in these cases the surrounding circumstances which are necessarily brought into view and showing how the accident occurred, contain, without

further proof, sufficient evidence of the defendant's duty and of his negligence to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured party is able to offer or that it is necessary to offer.' "

We do not overlook the fact that appellant's witness, Welburn, testified that when appellee's foreman, Hammonds, warned the crew of the defective condition of the rope in question by means of the admonition previously mentioned in the opinion, appellant as a member of the crew was, according to his recollection, present; he did not, however, undertake to say that the warning was heard by appellant, but, on the contrary, said he was unable to state whether or not it was heard by him. The appellant himself testified that if such warning was given it was not heard by him. Whether the warning was heard by appellant was a question that should have been submitted, under proper instructions, to the jury with the other issues of fact, such as whether appellant's injuries resulted from appellee's negligence, an assumed risk, or his own contributory negligence.

As, in our opinion, the action of the trial court in peremptorily directing the jury to find a verdict for the appellee was error, the judgment is reversed and cause remanded for a new trial in conformity to the opinion.