## Norton's Administrator v. Winstead.

(Decided February 22, 1927.)

### Appeal from Rockcastle Circuit Court.

1. Evidence—Deceased's Statements Three Minutes After he Was Shot, Telling Who Killed Him and Circumstances of Killing, Held Part of Res Gestae.—Statements of deceased, within three minutes after he was shot, made to those who ran 300 yards to him, telling who killed him and circumstances of killing, held part of res gestae, in action by administrator against person named as murderer.

2. Evidence—Statements, to be Res Gestae, Must be Spontaneous Utterances of Thoughts Springing Out of Happening Itself.— Statements, to be admitted as part of res gestae, must be spontaneous utterances of thoughts springing out of happening itself, being made at time which would exclude presumption that they were result of premeditation or design.

3. Death—Evidence of Wife's Conduct on Hearing Shots Held Incompetent to Show Knowledge of Husband's Intent to Kill Deceased.—Evidence that defendant's wife ran down road and into cornfield, after shots were fired which killed plaintiff's intestate, held properly excluded, since they did not show any knowledge that husband intended to kill him.

C. C. WILLIAMS and A. FLOYD BYRD for appellant.

B. J. BETHURUM and JOHN S. CARROLL for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

This is an appeal from a judgment of the Rockcastle circuit court based on the verdict of the jury rendered in favor of the appellee. On the 25th day of August, 1921, appellee shot and killed W. H. Norton. It is alleged in the petition that this was wrongfully and maliciously done and not in the self-defense, or apparently necessary self-defense, of appellee.

The appellant relies for reversal on errors committed by the lower court in sustaining objections to certain evidence offered in support of his cause of action. At the time of the killing of W. H. Norton by appellee, E. B. Norton, Oscar Scott and George Bray were about 250 yards away from the scene. There was no eye-witness to the killing other than the deceased and appellee. Hearing the shots the three witnesses mentioned ran to the scene. They arrived at the place where the killing took

place in about three minutes according to their testimony. E. B. Norton was the brother of W. H. Norton. He heard W. H. Norton cry out and he knew something of a serious nature was happening to him. He ran as rapidly as he could. The distance that he ran was about 300 yards as he did not traverse a straight line from the place where he was to the place of the killing. It is reasonably certain that no more than three minutes elapsed before E. B. Norton, Scott and Bray arrived at the place of the killing. When they reached the place they found W. H. Norton lying in the road shot through the bowels. These witnesses were not allowed to tell what W. H. Norton said upon their arrival and that is the chief basis of complaint urged for a reversal of the judgment. E. B. Norton was examined, not in the presence of a jury so that the court might know exactly the nature of the evidence which was proposed. This witness made this statement:

"He said he was killed, and I asked him who did it. He said Jim Winstead. I asked him what the trouble was. He told me he hailed him there, and was standing inside of the fence and halted him, and he stopped, responded to the halt, and he said you have been lying on me. I told him I had not. He said, I give you to understand, by God, I live around here, and went to shooting.

"My brother said he was sitting in the seat. Winstead jumped on the horse and started to shoot him again, and he put up his hands and begged him not to, said he had already killed him, and he jumped on his horse and ran through the field."

Appellant offered to prove by Oscar Scott and George Bray that W. H. Norton made the statements as testified to by E. B. Norton. The court would not allow this proof to be heard and considered by the jury. It is insisted by appellant that it was a part of the *res gestae,* and that is a question which we must determine.

This court has often had before it the question what is a part of the *res gestae,* but it is difficult to deduce any rule which is applicable to all cases. It has been held that the statements need not be strictly contemporaneous with the exciting cause before they may be admitted as a part of the *res gestae.* The admission of statements as a part of the *res gestae* is not controlled wholly by the

question of time, but probably the controlling question is whether or not there was an opportunity to deliberately make up a statement between the happening of the event and the time of making the statement. Before a statement can be admitted as a part of the *res gestae* the nervous excitement produced by the happening must still predominate and the reflective processes of the mind must be in abeyance. Statements to be admitted as a part of the *res gestae* must be spontaneous utterances of thoughts springing out of the happening itself and they must be made at a point of time which would exclude the presumption that they were the result of premeditation or design. Some of the cases illustrating the proper admission of statements as a part of the *res gestae* are as follows: Deacon v. Comlth., 162 Ky. 188, 172 S. W. 121; Roberts v. Louisville Railway Co., 168 Ky. 230, 181 S. W. 1131; Louisville Railway Co. v. Broaddus' Admr., 180 Ky. 298, 202 S. W. 654; Louisville Railway Co. v. Johnson's Admr., 131 Ky. 277, 115 S. W. 207, 20 L. R. A. (N. S.) 133; McLeod v. Ginther's Admr., 80 Ky. 399; Illinois Central Railway Co. v. Houchins, 125 Ky. 483, 101 S. W. 924; L. & N. R. R. Co. v. Strange's Admr., 156 Ky. 439, 161 S. W. 239; L. & N. R. R. Co. v. Messer, 164 Ky. 218, 175 S. W. 360; Cinn., N. O. & T. P. Ry. Co. v. Evan's Admr., 129 Ky. 152, 110 S. W. 844; L. & N. R. R. Co. v. Shaw, 53 S. W. 1048; Brown v. Louisville R. R. Co., 53 S. W. 1041; Floyd v. Paducah R. R. Co., 64 S. W. 653, 23 Ky. L. R. 1077; L. & N. R. R. Co. v. Molloy, 91 S. W. 685, 28 Ky. R. L. 1113.

An examination of these cases will show that this court has been rather liberal in the admission of statements as a part of the *res gestae*.

In the recent case of Davis, Director General of Railroads v. Burns' Administratrix, 207 Ky. 703, the court well stated the rule deducible from the authorities above cited. The court there said:

"The ancient rule that statements of either party to the transaction that is the subject of litigation to be competent as part of the *res gestae* must have been made contemporaneously with and at the place of the main transaction has in modern times been much liberalized. Under the ancient rule the questioned statement here would have been excluded as

being too far removed both in point of time and place from the main transaction. The spontaneity of the statement seems to have been substituted for its contemporaneousness in point of time and place until now the rule seems to be that any statement made by either of the parties with reference to the transaction, which is the subject of the litigation, which is made close enough in point of time and place to it and under such circumstances as to make it appear that the one making the statement still is so gripped by and under the influence of the main transaction that the statement appears to be the transaction itself speaking through the person, may properly be admitted as part of the *res gestae*. If it appears that the statement is an attempt on the part of the party to narrate what occurred and to be merely his version of the transaction, it is not a part of the *res gestae* and should be rejected as a self-serving declaration."

Applying the facts in the instant case to the rule deduced as set out above we find some difficulty in arriving at a conclusion as to whether the statements made by Norton were merely his version of the transaction or whether at the time he made the statements he was still so gripped by, and under the influence of, the main transaction that the statements appeared to be the transaction itself speaking through the person.

An examination of the case of McLeod v. Ginther, *supra*, discloses that one Mr. Fish was the conductor on the train which had collided with another train resulting in the death of Ginther and others. The following evidence was offered:

"Q. What did you say to Fish and what did Fish say to you concerning the collision?

"A. Well, he was the first man I met. He came up to me and commenced pulling out his watch, and says, 'What time have you got?' I says, 'I have no time to compare time now; there is my conductor.' He says, 'I had until 10:10 to make Beards.' I says, 'No, you had not.' He went on to my conductor, and that is all that passed between us at that time."

In passing on the competency of this evidence the court said:

> "The appellant insists that the statement of Fish that 'I had until 10:10 to make Beards' was incompetent, because not a part of the *res gestae*.
>
> "What constitutes *res gestae* is often difficult to determine, as the relationship of facts, when the thing done is composed of different agencies and actions, separated more or less in point of time and manner of performance, is not always palpable, and though necessary, may frequently be obscured by the multiplicity of particles which go to make up the main fact under consideration. (1st Greenleaf, section 108.) Hence the particular facts of each case must determine the relevancy of declarations sought to be proven as part of the act of facts constituting and legally belonging to the cause of action."

In the Molloy case, *supra,* the court admitted statements made by one Oller, who was in a buggy at the time it was struck by a train, which statements were made a few minutes after the accident. We quote from the opinion in that case as follows:

> "John Burnett was sitting on his porch 475 yards away and ran to the crossing at once, getting there just about the time that Dr. Blakeman did, or a little after. He asked Oller, 'How in the world did this thing happen?' Oller said he had started with this gentleman to Brownsville, and when they got in the flat this side he stopped and told the gentleman to hold on, that they had better not try to cross, and the gentleman told him that he thought they could get across, and they started up. When they got right up on the railroad the gentleman grabbed the lines and aimed to turn the horses to the left and the engine struck the right-hand wheels and killed the right-hand horse. This occurred at the scene of the wreck while Molloy was still lying there insensible, and before anything had been moved. It is in substance the statement as was made to Butler. Oller made the same statement at the same place to Garvin, the operator, about the same time, and within two or three minutes after the accident. Each of these statements were made by Oller within three minutes

after the occurrence, and should have been admitted as *res gestae,* being made at the scene of the wreck, and so soon after its occurrence as to be fairly regarded as part of it and a verbal act explaining it."

If the statements of Oller in that case were competent as a part of the *res gestae,* and the court held that they were, we are forced to the conclusion that the statements of the deceased in the instant case as shown by the evidence which was offered and rejected were competent and should have been admitted as a part of the *res gestae.*

It is also insisted that the court erred in sustaining objection to the evidence of the witness, George Bray, as to the actions and conduct of the wife of appellee about the time of the killing. It appears that Mrs. Winstead was at or near her home when the shots were fired and that this witness saw her running down the road immediately after the shots were fired and that she passed on down beyond the home of this witness and went through the gate and into a corn field back of the house. We suppose that counsel insist that this evidence was competent as showing that Mrs. Winstead had knowledge of what her husband intended to do when he left the house. We do not think, however, that the action or conduct of Mrs. Winstead is competent and the court properly so ruled. For the error of the court in refusing to admit the evidence of E. B. Norton, George Bray and Oscar Scott as to statements made by W. H. Norton, the case must be reversed.

Judgment reversed for proceedings consistent with this opinion.