## Sparks Bus Line, Inc., v. Spears.

Jan. 31, 1939.

R. W. KEENON for appellant.

J. E. CHILDERS for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellee, Tetory Spears, brought this action against the appellant, Sparks Bus Lines, Incorporated, and James Nunnery for injuries alleged to have been received by her while a passenger on appellant's bus, when an omobile owned by James Nunnery and

driven by his infant daughter, Eula Mae Nunnery, ran into the rear of the bus which had stopped to discharge passengers. Upon the trial of the case in the Pike circuit court, the jury returned a verdict for $500 in favor of the plaintiff against the Sparks Bus Lines and found for the defendant James Nunnery, and the petition was dismissed as to him.

The Sparks Bus Lines, Incorporated, seeks a reversal of the judgment on the following grounds: (1) Because the court erred in overruling its motion for a directed verdict in its favor at the conclusion of plaintiff's testimony and at the conclusion of all the testimony; (2) because the verdict is flagrantly against the evidence; (3) because the court erred in overruling the motion to quash the deposition of Dr. Stumbo; (4) errors in the admission and rejection of testimony; and (5) errors in the instructions.

The collision occurred on September 6, 1936, at a curve in the road from Paintsville to Pikeville about twelve miles from Pikeville, and in the vicinity of Tram, Kentucky. Mrs. Spears had purchased a round trip ticket from Pikeville to Paintsville, and the accident happened on the return trip. Mrs. Spears testified that the bus stopped suddenly on a curve and in the middle of the road. She later admitted that the bus might have pulled over a little. She further stated that the bus did not stop at the usual place for discharging passengers, and that due to the impact the driver's cap was knocked off. She described her injuries and stated that she was confined to the hospital for thirty-two days, and, upon returning to her home, was compelled to hire a woman to help her with her house work. She said that she was still suffering from her injuries at the time of the trial. Dr. W. L. Stumbo's deposition was read, and in it he said that Mrs. Spears was brought to his hospital sometime after the accident, and that two floating ribs had been fractured; that she expectorated some blood, and was delirious seven or eight days. Mary Johnson testified that she was a neighbor of Mrs. Spears, and was called to help take care of the appellee the night following the accident. She testified concerning appellee's inability to perform her household duties and described her injuries. A number of persons who were passengers on the bus at the time the accident occurred were introduced by the defendants, Sparks Bus Lines, Incor-

porated, and James Nunnery, and all of them testified that the shock from the collision was slight and that apparently no one was injured. They also testified that the bus stopped near Tram to discharge passengers; that it came to a stop slowly and on the extreme right-hand side of the road.

The appellant insists that its motion for a directed verdict should have been sustained not only because there was no evidence of negligence on its part, but also because the plaintiff's petition failed to allege negligence either in general or specific terms. The plaintiff alleged in her petition that while she was a passenger in appellant's bus traveling from Paintsville to Pikeville, there was a collision between the bus and the automobile of the defendant James Nunnery, and that as a result of said collision she was seriously injured. Her injuries were described, and the petition continued:

"Said injuries were caused and brought about by the joint and concurrent negligence and carelessness of defendants, Sparks Bus Lines, Incorporated, and Eula Mae Nunnery, who was operating James Nunnery's car as aforesaid."

A demurrer was filed to the petition, but we fail to find any order overruling it. Where the defendant, without calling upon the court to pass on a general demurrer, files an answer making an issue and proceeds to trial without objection, the demurrer will be treated as waived. Louisville & Nashville Railroad Company v. Hall, 273 Ky. 590, 117 S. W. (2d) 571. The appellant argues, however, that since the petition failed to state a cause of action, its motion for a directed verdict should have been sustained. In Park Circuit & Realty Company v. Coulter, 233 Ky. 1, 24 S. W. (2d) 942, it was said: "Allegations of negligence are adequate when they are such as to enable persons of ordinary understanding to know what is intended to be relied on as basis of liability."

In Chiles v. Drake, 2 Metc. 146, 59 Ky. 146, 74 Am. Dec. 406, the court said:

"In actions for personal injuries, resulting from negligence, it has always been regarded as sufficient for the plaintiff to allege, in general terms, that the injury complained of was occasioned by the carelessness and negligence of the defendant. He

has not been required to state the circumstances with which the infliction of the injury was accompanied, in order to show that it had been occasioned by negligence. An allegation of the extent of the injury, and of the manner in which it was inflicted, has been always regarded as sufficient.''

See, also, Louisville & Nashville Railroad Company v. Hall, supra; Davis' Adm'r v. Ohio Valley Banking & Trust Company, 127 Ky. 800, 106 S. W. 843, 15 L. R. A., N. S., 402, 403.

The petition is not aptly drawn, but we think it was sufficient under the rule announced in the foregoing cases. In view of our conclusion that the judgment must be reversed because the court refused to admit certain evidence offered by appellant, we deem it unnecessary to consider or discuss the sufficiency of the evidence, since it may be different on another trial.

Appellant introduced C. B. Bailey, the driver of the bus. He testified that the bus had stopped, and the door was open to permit passengers to alight when the collision occurred. Immediately after the collision he got out of the bus and went back to the Nunnery car. He was asked if Miss Nunnery, the driver of the car, said anything to him at that time. To this question there was an objection, and the court had the jury retire and heard this testimony out of their presence:

''Q. Mr. Bailey, your bus was standing still when the other car struck it? A. Yes sir.

''Q. Now after that collision how long was it before you got out of the bus and went back to where the young lady was? A. Just as soon as I could get off and go back there.

''Q. How far was the other car back of the bus? A. It was right up against the bus.

''Q. Then you walked, as soon as the collision occurred, you got out and walked back, was the door open or closed? A. On the bus?

''Q. Yes. A. It was open.

''Q. The door was open, you stepped out of the door and walked to the rear of the bus? A. Yes sir.

''Q. And that is when you had the conversation with her? A. Yes sir.

"Q. And what did Miss Nunnery say to you? A. She said—I said what happened Miss Nunnery, I already knew Miss Nunnery, she had ridden on the bus, I said what has happened to you and she said my brakes failed. She first said look what I have done, and I said, well don't be excited you are all right, there isn't any of the folks in your car hurt.

"Q. Then what did she say? A. She said it was my fault, my brakes failed.

"The Court: How much time do you think elapsed from the time the car struck the bus until you got back there and talked to Miss Nunnery? A. Oh, probably a minute or less, as soon as I could get back there.

"The Court: I think, gentlemen, what Miss Nunnery said under the circumstances was not part of the res gestæ and is incompetent as evidence in chief and I will still sustain the objection to it but it may stand in the record as an avowal.

"Defendant Sparks Bus Lines except."

We think the trial court erred, under the circumstances, in ruling that the statements made by Miss Nunnery were not part of the res gestæ and therefore inadmissible.

"Res gestæ may be broadly defined as matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without a knowledge of which the main fact might not be properly understood. They are the events themselves speaking through the instinctive words and acts of the participants." 10 R. C. L. 974.

The tendency of recent adjudications is to extend rather than to narrow the scope of the introduction of evidence as a part of the res gestæ. In Shadowski v. Pittsburg Railways Company, 226 Pa. 537, 75 A. 730, 29 L. R. A., N. S., 302, the court said:

"Under the doctrine of res gestæ those circumstances which are the undesigned incidents of the occurrence upon which the suit is based may be

proven when illustrative of the act about which complaint is made. It is true also that these incidents may be separated from the act by a lapse of time more or less appreciable, but they must grow out of and be in a legal sense immediately connected with the litigated act."

In Norton's Adm'r v. Winstead, 218 Ky. 488, 291 S. W. 723, we said:

"This court has often had before it the question what is a part of the res gestæ but it is difficult to deduce any rule which is applicable to all cases. It has been held that the statements need not be strictly contemporaneous with the exciting cause before they may be admitted as a part of the res gestæ. The admission of statements as a part of the res gestæ is not controlled wholly by the question of time, but probably the controlling question is whether or not there was an opportunity to deliberately make up a statement between the happening of the event and the time of making the statement. Before a statement can be admitted as a part of the res gestæ the nervous excitement produced by the happening must still predominate and the reflective processes of the mind must be in abeyance. Statements to be admitted as a part of the res gestæ must be spontaneous utterances of thoughts springing out of the happening itself and they must be made at a point of time which would exclude the presumption that they were the result of premeditation or design."

An exhaustive review of the domestic cases on the subject was made in Consolidated Coach Corporation v. Earl's Administrator, 263 Ky. 814, 94 S. W. (2d) 6. Numerous cases are cited in the opinion in that case in which statements made several minutes after the accident were held competent under the res gestæ rule. Here the statement of Miss Nunnery was made within a fraction of a minute after the accident and clearly was made [page 8], "under the immediate influence of the principal transaction and as a spontaneous expression of thought created by or springing out of the transaction itself."

The rule in most jurisdictions is that a statement or exclamation made by a bystander not a participant

606

in the transaction may be admitted as part of the res gestæ. 10 R. C. L. 980. There seems to be some conflict in our opinions as to whether or not utterances or exclamations by a mere bystander may ever be admissible as res gestæ. See Brandenburg v. Commonwealth, 260 Ky. 70, 83 S. W. (2d) 862. It is a universally recognized rule, however, that statements of a participant in an accident or other transaction, though he is not a party litigant, are admissible as part of the res gestæ if the other requirements of the res gestæ rule are met. Poe v. Hankins' Adm'x, 251 Ky. 466, 468, 65 S. W. (2d) 457; Louisville Railroad Company v. Johnson's Adm'r, 131 Ky. 277, 115 S. W. 207, 20 L. R. A., N. S., 133. Eula Mae Nunnery was a participant in the accident, and the statement alleged to have been made by her was admissible under the circumstances. In view of the other evidence in the case, it was highly important, and we think its rejection was prejudicially erroneous.

Conceding without deciding that there was sufficient evidence to take the case to the jury, the instructions given by the court properly presented the issues. All questions not discussed are expressly reserved.

For the reasons indicated, the judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.