WESTERN & ATLANTIC RAILROAD *v.* LOCHRIDGE, admx.

No. 7058. FEBRUARY 26, 1930.

*Tye, Thomson & Tye, Fitzgerald Hall,* and *Neel & Neel,* for plaintiff in error.

*Hewlett & Dennis, W. C. Martin,* and *Whitaker & Whitaker,* contra.

ATKINSON, J. Josephine Lochridge as administratrix of the estate of her deceased husband, John Lochridge, instituted an action against the Western and Atlantic Railroad for the homicide of her intestate. The petition was in two counts, one under the State law and the other under the Federal employer's liability act. The first count was abandoned, and the case was tried under the second

count. John Lochridge was fireman on a work-train called number 383, consisting of an engine and two cars called "cabooses." The train was in charge of a conductor and an engineer. There were six persons on the train as it left Kingston, northbound for Dalton, at 4:45 o'clock a. m., on the 19th of June. The railroad had only one track. The first station north of Kingston was Hall's station, four or five miles distant, at which was a side-track by means of which trains could pass one another. The next station was Adairsville, nine or ten miles from Kingston. The train ran past Hall's station without taking to the side-track, and about one mile before reaching Adairsville, and being about to go around a curve, came in "head-on" collision with the southbound passenger-train called number 3. The track was up grade from Kingston to a point a short distance north of the north switch of the side-track at Hall's station, and from there it was down grade to the place of collision. Lochridge, the fireman, Robinson, the engineer, and Tomlinson, another employee, were instantly killed. At the trial Reagan, the flagman, testified as a witness for the plaintiff. E. L. Payne, the conductor, was present, but did not testify. H. L. Payne, the "front brakeman," being in an asylum, did not testify. The jury returned a verdict for the plaintiff for $20,000. The defendant's motion for a new trial being overruled, the judgment was affirmed on writ of error to the Court of Appeals. The case is now for decision on a writ of certiorari to the judgment of the Court of Appeals.

■ The Court of Appeals ruled: "The death of a fireman in a collision of trains may be found to have resulted in part from the negligence of other employees, within the meaning of the Federal employer's liability act, where but for the negligence of the conductor and engineer who were in charge of one of the trains, and under whom the fireman was working, the collision would not have occurred, notwithstanding the fireman may have participated with the others in the acts or omissions from which it resulted." Error was assigned upon this ruling, "because it appeared from the evidence in the instant cause that the fireman not only participated with the conductor and engineer in the acts or omissions from which the collision occurred, but that the preponderance of evidence was that the fireman failed to discharge duties with which he was specially chargeable, and neglected to observe rules of his em-

ployer, with which he was acquainted, imposing such duties upon him, and that by a proper and faithful discharge of such duties and observance of such rules on his part the collision could and probably would have been avoided;" and further, "upon the ground that although the death of the fireman may have resulted in part from negligence of other employees of defendant, the defendant would not be liable for such death, under a proper interpretation and application of the Federal employer's liability act, where the fireman actually participated with such other employees in that negligence which caused the collision." The negligence of "other employees" referred to by the Court of Appeals had reference to the negligence of the conductor and engineer having physical charge of the train, in running beyond the siding at Hall's station and proceeding north along the main-line tracks towards Adairsville, on the schedule time of the southbound passenger train No. 3. The participation by the fireman "in the acts or omissions" which resulted in the collision, had reference to the work of the fireman as one of the train crew, and to his failure to discover and call to the attention of the engineer the fact that he had run by the siding and was in imminent danger of collision with the train No. 3. The language of the statute (Federal employer's liability act, April 22, 1908, 45 USCA. §§ 51, 53) in part is that the employer shall be liable for "injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier," § 51, and "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." § 53.

In Union Pacific Railroad Co. v. Hadley, 246 U. S. 330 (38 Sup. Ct. 318, 62 L. ed. 751), it was held: "The fact that a brakeman, who was killed by a rear-end collision while in the caboose of a standing train, would have escaped if he had been at his post to give warning, as his duty required, does not make his neglect the only proximate cause of his death, if the collision was due also to negligent operation of the train coming from behind." In Illinois Central Railroad Co. v. Skaggs, 240 U. S. 66 (36 Sup. Ct. 249, 60 L. ed. 528), the plaintiff Skaggs was held entitled to recover for injury received while acting as brakeman in conjunction with another brakeman in switching a train. It was said in the opinion:

"It is contended that the State court erred in permitting a recovery under the Federal statute, for the reason that the injury resulted from Skaggs' own act, or from an act in which he participated. The company, it is said, 'can not be negligent to an employee whose failure of duty and neglect produced the dangerous condition.' It may be taken for granted that the statute does not contemplate a recovery by an employee for the consequences of action exclusively his own; that is, where his injury does not result in whole or in part from the negligence of any of the officers, agents, or employees of the employing carrier or by reason of any defect or insufficiency, due to its negligence, in its property or equipment. . . But, on the other hand, it can not be said that there can be no recovery simply because the injured employee participated in the act which caused the injury. The inquiry must be whether there is neglect on the part of the employing carrier; and if the injury to one employee resulted 'in whole or in part' from the negligence of any of its other employees, it is liable under the express terms of the act. That is, the statute abolished the fellow-servant rule. If the injury was due to the neglect of a coemployee in the performance of his duty, that neglect must be attributed to the employer; and if the injured employee was himself guilty of negligence contributing to the injury, the statute expressly provides that it 'shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.' See Second Employers' Liability Cases, 223 U. S. 1, 49, 50 [32 Sup. Ct. 169, 56 L. ed. 327, 38 L. R. A. (N. S.) 44]; Seaboard Air-Line v. Tilghman, 237 U. S. 499, 501 [35 Sup. Ct. 653, 59 L. ed. 1069]. We think that the argument for the plaintiff in error overlooks the inferences of fact which the jury was entitled to draw. Thus, the jury could properly regard the two brakemen as assisting each other in the movement in question. Such assistance was certainly appropriate, if not absolutely necessary. The very purpose of having two brakemen was not to put upon either the entire responsibility." See 18 R. C. L. 831, § 286.

In Davis v. Kennedy, 266 U. S. 147 (45 Sup. Ct. 33, 69 L. ed. 212), it was held: "Where a railway collision, killing an engineer, was directly due to neglect of his personal duty not to move his train forward without positively ascertaining that another train had passed, the possibility that the accident might have been pre-

vented but for contributory negligence of other members of the crew in not performing the lookout duty devolving also upon them will not sustain an action by his representative against the carrier, under the Federal employers' liability act, p. 148." In the opinion it was said: "It was the personal duty of the engineer positively to ascertain whether the other train had passed. His duty was primary, as he had physical control of No. 4, and was managing its course. It seems to us a perversion of the statute to allow his representative to recover for an injury directly due to his failure to act as required, on the ground that possibly it might have been prevented if those in secondary relation to the movement had done more. Frese v. Chicago, Burlington & Quincy R. R. Co., 263 U. S. 1 [44 Sup. Ct. 1, 68 L. ed. 131]." In the more recent case of Unadilla Valley Railway Co. v. Caldine, 278 U. S. 139 (49 Sup. Ct. 91, 73 L. ed. 224), involving the right of Caldine, a conductor, to recover, it was said in the opinion: "The phrase of the statute, 'resulting in whole or in part,' admits of some latitude of interpretation, and is likely to be given somewhat different meanings by different readers. Certainly the relation between the parties is to be taken into account. It seems to us that Caldine, or one who stands in his shoes, is not entitled, as against the railroad company that employed him, to say that the collision was due to any one but himself. He was in command. He expected to be obeyed, and he was obeyed as mechanically as if his pulling the bell had itself started the train. In our opinion he can not be heard to say that his subordinate ought not to have done what he ordered. He can not hold the company liable for a disaster that followed disobedience of a rule intended to prevent it, when the disobedience was brought about and intended to be brought about by his own acts. See Davis v. Kennedy, 266 U. S. 147 [supra]." The above decisions would be authority for holding that the engineer in the instant case could not recover, because of his failure to perform his personal and primary duty in reliance upon the fireman having only a secondary relation to the operation of the train to protect him as against the consequences of his own negligence; but not authority to support the proposition that the fireman, being a mere underling whose relation to the operation of the train was secondary, could not recover on account of the negligence of the engineer and conductor in charge of the train, although the fireman may also have

been negligent in failure to perform his duty in assisting the engineer in operating the train. The ruling of the Court of Appeals accords with the construction of the statute as expressed in Illinois Central Railroad Co. *v.* Skaggs, supra, and states a correct principle of law applicable to the case.

■ The Court of Appeals ruled: "The burden of establishing the defense of assumption of risk rests upon the railroad company, and can not be held to have been sustained as a matter of law, except where the evidence to show such assumption is clear and uncontradicted. The evidence in the present case did not measure up to this standard, and the question was one for the jury." Error was assigned upon this ruling, on the ground that it clearly appeared from the uncontradicted evidence that there was such assumption of risk on the part of Lochridge, the fireman, as should defeat a recovery in this cause. The language of the statute (45 USCA. § 54) is, in part: "Such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." In an action brought under the statute, the common-law defense of assumption of risk is open to the defendant, except where it is shown that the company violated a Federal statute passed for the protection of the employees. Seaboard Air-Line Railway *v.* Moore, 228 U. S. 433 (33 Sup. Ct. 580, 57 L. ed. 907); Seaboard Air-Line Railway *v.* Horton, 233 U. S. 492 (34 Sup. Ct. 635, 58 L. ed. 1062); Southern Railway Co. *v.* Crockett, 234 U. S. 725 (34 Sup. Ct. 897, 58 L. ed. 1564); Jacobs *v.* Southern Railway Co., 241 U. S. 229 (36 Sup. Ct. 588, 60 L. ed. 970). In McFarland *v.* Chesapeake & O. Ry. Co., 177 Ky. 551 (197 S. W. 944), it was held: "The assumption of risk is a rule of the common law, and is based on contract, and, by implication, on a servant's act in voluntarily exposing himself to danger." This principle was recognized in *Central of Ga. Ry. Co.* v. *Allen,* 140 *Ga.* 333 (78 S. E. 1052), and cit. In Pennsylvania Co. *v.* Stalker, 67 Ind. 329 (119 N. E. 163), it was held: "Being contractual in its origin and nature, assumption of risk will not arise by implication of law from a perilous situation suddenly created." In Boldt *v.* Pennsylvania Railroad Co., 245 U. S. 441 (38 Sup. Ct. 139, 62 L. ed. 385), it was held: "Under the Federal employers' liability act, except in the cases

specified in § 4, the employee assumes extraordinary risks incident to his employment, and risks due to negligence of employer and fellow employees, when obvious or fully known and appreciated by him." It was stated in the opinion: "At common law the rule is well settled that a servant assumes extraordinary risks incident to his employment, or risks caused by the master's negligence, which are obvious or fully known and appreciated by him. Shearman & Redfield on Negligence (6th ed.), § 208; Bailey Personal Injuries (2d ed.), § 385. This general doctrine was clearly recognized in Gila Valley &c. Ry. Co. v. Hall, 232 U. S. 94, 101 [34 Sup. Ct. 229, 58 L. ed. 521]; Jacobs v. Southern Ry. Co., supra; Chesapeake & Ohio Ry. Co. v. DeAtley, 241 U. S. 310, 313 [36 Sup. Ct. 564, 60 L. ed. 1016]; and Erie R. R. Co. v. Purucker, 244 U. S. 320, 324 [37 Sup. Ct. 629, 61 L. ed. 1166]." In that case the homicide was thus described: "While between cars, contrary to instructions, and assisting in an effort to adjust a faulty coupler, Edward J. Boldt, an experienced yard conductor, was killed. The coupler was at the south end of a 'string' standing on an inclined switch; another 'string' moving down from the north hit the standing one violently and drove it against deceased and across a space of twenty feet."

In Chesapeake & Ohio Railway Co. v. Nixon, 271 U. S. 218 (46 Sup. Ct. 495, 70 L. ed. 914), a railroad section foreman, one of whose duties was to go over and inspect the track and keep it in repair, was held to have assumed the risk of being run down by a train while going to his work over a part of the track that was in his charge, riding (by permission of a superior) the railway velocipede which he used in track inspections. It was said in the opinion: "The deceased was an experienced section foreman upon the defendant's road. One of his duties was to go over and examine the track and to keep it in proper repair. When inspecting the track he used a three-wheeled velocipede that fitted the rails and was propelled by the feet of the user. He had obtained from his immediate superior, the supervisor of track, leave to use the machine also in going to his work from his house, about a mile distant, over a part of the track that was in his charge. His work began at seven in the morning, and at half-past six on the day of his death he started as usual. Five minutes later he was overtaken by a train and killed. For reasons that the jury found insufficient to excuse

the omission, the engineer and fireman of the train were not on the lookout; and the question raised is whether as toward the deceased the defendant owed a duty to keep a lookout, or whether on the other hand the deceased took the risk. If the accident had happened an hour later when the deceased was inspecting the track, we think that there is no doubt that he would be held to have assumed the risk, and to have understood, as he instructed his men, that he must rely upon his own watchfulness and keep out of the way. The railroad company was entitled to expect that self-protection from its employees. Aerkfetz v. Humphreys, 145 U. S. 418 [12 Sup. Ct. 835, 36 L. ed. 758]; Boldt v. Pennsylvania R. Co., 245 U. S. 441, 445, 446 [supra]; Connelly v. Pennsylvania R. Co., 201 Fed. 54 [119 C. C. A. 392, 47 L. R. A. (N. S.) 867]; Davis v. Philadelphia & R. Ry. Co., 276 Fed. 187; Pennsylvania R. Co. v. Wachter, 60 Md. 395; 4 Elliott on Railroads, 3d ed., § 1862. The duty of the railroad company toward this class of employees was not affected by that which it might owe to others." The underlying principle in this decision is that the railroad company did not owe the employee a duty to keep a lookout for him, and consequently that he assumed the risk of being run down by the train. In the recent case of Delaware, L. & W. R. Co. v. Koske, 279 U. S. 7 (49 Sup. Ct. 202, 73 L. ed. 578), it was said: "Except as provided in section 4 of the act, the employee assumes the ordinary risks of his employment; and, when obvious or fully known and appreciated, he assumes the extraordinary risks and those due to negligence of his employer and fellow employees."

In Chesapeake & Ohio Railway Company v. DeAtley, supra, it was held: "A railroad employee having voluntarily entered an employment requiring him on proper occasions to board a moving train assumes the risk normally incident thereto, other than such risk as may arise from the failure of the engineer to use due care to operate the train at a moderate rate of speed, so as to enable his coemployee to board it without undue peril. Such an employee may presume the engineer will exercise due care for his safety, and does not assume the risk attributable to operation at unduly high speed until made aware of danger, unless the undue speed and consequent danger are so obvious that an ordinarily careful person in his situation would observe the speed and appreciate the danger. An employee is not bound to exercise care to discover extraordinary

dangers arising from the negligence of the employer or of those for whose conduct the employer is responsible, but may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger are so obvious that an ordinarily careful person under the circumstances would observe and appreciate them." In the course of the opinion it was said: "It is insisted that even conceding the train was operated at a negligent rate of speed in view of plaintiff's purpose to board it, yet he assumed the risk of injury involved in the attempt. The act of Congress, by making the carrier liable for an employee's injury 'resulting in whole or in part from the negligence of any of the officers, agents, or employees' of the carrier, abrogated the common-law rule known as the fellow-servant doctrine, by placing the negligence of a coemployee upon the same basis as the negligence of the employer. At the same time, in saving the defense of assumption of risk in cases other than those where the violation by the carrier of a statute enacted for the safety of employees may contribute to the injury or death of an employee (Seaboard Air-Line v. Horton, 233 U. S. 492, 502 [supra]), the act placed a coemployee's negligence, where it is the ground of the action, in the same relation as the employer's own negligence would stand to the question whether a plaintiff is to be deemed to have assumed the risk. On the facts of the case before us, therefore, plaintiff having voluntarily entered into an employment that required him on proper occasion to board a moving train, he assumed the risk of injury normally incident to that operation, other than such as might arise from the failure of the locomotive engineer to operate the train with due care to maintain a moderate rate of speed in order to enable plaintiff to board it without undue peril to himself. But plaintiff had the right to presume that the engineer would exercise reasonable care for his safety, and can not be held to have assumed the risk attributable to the operation of the train at an unusually high and dangerous rate of speed, until made aware of the danger, unless the speed and the consequent danger were so obvious that an ordinarily careful person in his situation would have observed the one and appreciated the other. Gila Valley Ry. Co. v. Hall, 232 U. S. 94, 101 [supra]; Seaboard Air Line v. Horton, 233 U. S. 492, 504 [supra].

"It is argued, that, so far as the question of assumed risks is

concerned, it makes no difference, in the case of a brakeman about to board a moving train, whether it is operated at a low or at a high rate of speed; that if the train is moving slowly, the risk is an ordinary one incident to the business of railroading; while if it is moving rapidly, the risk is open, obvious, and apparent. Were we to consider only extreme cases, such as were instanced in argument, the point might be conceded; that is, that mounting a train operated at one mile per hour is an ordinary risk, while mounting a train operated at fifty miles per hour presents a risk which, although extraordinary, is open, obvious, and apparent. But these extremes do not present an apt illustration. A speed very much below fifty miles would endanger the brakeman's safety, at the same time being much less apparent. If those operating the train in question knew that plaintiff intended to board it at that point— and the verdict is to that effect,—the jury was warranted in finding that plaintiff had a right to expect that the train would be moving at a moderate rate of speed such as would enable an ordinarily careful brakeman to get on with reasonable safety; and this upon the ground that as head-brakeman plaintiff had the right—indeed, that it was his duty—to get upon the engine, since otherwise the train would be left without a head-brakeman and the engineer without the information required for the safe operation of the train; and that plaintiff had no notice nor any opportunity to determine with reasonable certainty what the speed of the train was, or that it was too great for his safety, until the engine had practically reached him. It can not be said, as matter of law, that a speed of twelve miles per hour would necessarily be obvious to him as a dangerous speed, before he made the attempt to board the train. It is insisted that the true test is, not whether the employee did in fact know the speed of the train and appreciate the danger, but whether he ought to have known and comprehended; whether, in effect, he ought to have anticipated and taken precautions to discover the danger. This is inconsistent with the rule repeatedly laid down and uniformly adhered to by this court. According to our decisions, the settled rule is, not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to

his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them. Gila Valley Ry. Co. *v.* Hall, Seaboard Air-Line *v.* Horton, ubi, supra."

In the instant case Lochridge, the fireman on the work-train number 383, assumed the ordinary risks of his employment. These did not include hazards produced by negligence of his coemployees. Hazards produced by negligence of his coemployees would be extraordinary risks. Extraordinary risks produced by negligence of his coemployees would be assumed by him only when the negligence and danger arising from it were fully known to him or were so obvious that he as an ordinarily careful person under the circumstances would observe and appreciate them. The train number 383 was rightfully on the track until it passed the siding at Hall's station without stopping and taking the siding to allow the southbound passenger-train number 3 to pass. At that time the negligence of the conductor and engineer in charge of the train came into existence. The collision occurred about five minutes thereafter while the train which they were operating was proceeding north on the schedule time of the southbound passenger-train number 3. On the question of assumption of risk, it becomes a question of fact as to when the negligence of the conductor and engineer and danger arising from it became known to Lochridge, the fireman, or became so obvious that as an ordinarily careful person he would observe and appreciate them, and what he did or said, if anything, after the danger was so known or obvious, going to show that he then voluntarily assumed this extraordinary risk of danger of collision with the southbound passenger-train number 3. The engineer and fireman were both killed, and there was no evidence as to the sayings or conduct of the fireman during the short interval of time intervening between the time of passing the station and the collision. Any conclusion that he assumed the extraordinary risk must necessarily be based upon inference derived from the facts and circumstances occuring during that interval. They do not demand such a conclusion.

■  The Court of Appeals ruled: "In a suit under the Federal employer's liability act, an instruction which defines 'preponderance of evidence' in the language of the Civil Code of Georgia,

§ 5731, is not erroneous." Error was assigned upon this ruling, on the ground (substantially stated in several ways) that the charge of the trial judge to which the ruling had reference was inapplicable in a cause falling under the Federal employer's liability act, for the reason that the plaintiff must establish negligence of the defendant and show that such negligence was the proximate cause of the injury, and such requirement is not satisfied "by evidence sufficient simply 'to incline the mind of a reasonable and impartial person to one side of the issue rather than to the other'." The decision of the Court of Appeals was not erroneous for the reasons assigned.

■ The Court of Appeals ruled: "The court did not commit reversible error in stating in charge to the jury certain allegations of the petition, even though there may have been no evidence or insufficient evidence to support them." Error was assigned upon this ruling, on the ground that the charge of the trial judge to which the ruling had reference stated contentions of the plaintiff based on material allegations of the petition as amended, some of which were not supported by evidence, and permitted the jury to consider such allegations without evidence to support them; whereas the judge should have eliminated all such allegations and should have instructed the jury only as to those which were supported by evidence, and that for the reasons just stated the Court of Appeals erred in its ruling as above quoted. The decision of the Court of Appeals was not erroneous for the reasons assigned.

■ The Court of Appeals ruled: "The court gave to the jury the following instructions, which were variously excepted to: 'I charge you that where an engineer, fireman, conductor, and other members of the train-crew are shown to have been operating a train, and a wreck occurs, there is no presumption that either of them is without fault. I charge you that the law presumes that every man in his private and official character does his duty, until the contrary is shown.' *Held:* Under the facts and issues of this case, there was no merit in any of the exceptions to this charge." Error was assigned upon this ruling, on the ground that it was erroneous "for the reasons stated" in the tenth ground of the motion for new trial, "hereinabove set forth." The grounds so set forth were as follows: "Movant insists that the first sentence of said charge was erroneous, because, in an action under the Federal

employer's liability act, where members of the train-crew are shown to have been operating a train and a wreck occurs, there is no presumption that either of them is at fault; and in order to recover, plaintiff must show negligence of defendant's servants causing or contributing to the injury complained of; and in such a case plaintiff is not entitled to have the jury instructed that there is no presumption that defendant's servants are without fault. Such an instruction in such a case is misleading and confusing, and its tendency is to relieve the plaintiff of the burden put upon her to show negligence, because she enters the case with the status of one burdened with the duty of showing fault; and because, until she does so show, the law holds the defendant and its servants guiltless. Movant insists that the second sentence of said charge herein excepted to, to wit: 'that the law presumes that every man in his private and official character does his duty, until the contrary is shown,' was erroneous for the following reasons: (1) Because, taken together with said first sentence, it was contradictory and confusing. In the first sentence of said charge the court instructed the jury that there was no presumption that any of the train-crew were or was without fault; while in the next sentence the court instructed them that the law presumed that every one of them was without fault, until the contrary was shown. (2) Because the charge that 'the law presumes that every man in his private and official character does his duty, until the contrary is shown,' was erroneous, in that such presumption does not exist under the Federal employer's liability act, which makes it necessary that the negligence of defendant be shown by proof and not by presumption in favor of plaintiff, and that the liability of defendant be shown by the testimony and the inferences which the jury may reasonably draw therefrom. (3) Further, because there is no such presumption of law; such a presumption, if and when it exists, is a presumption of fact or an inference from facts appearing. (4) Further, because, it being not contested by defendant that there was negligence on the part of its conductor and engineer, the said charge could have had no applicability other than as in favor of the decedent or the plaintiff as representative of the decedent. Otherwise, if the proper construction of the charge is that there is a presumption of law that every .one of the train crew did his duty, until the contrary is shown, there would be a

meaningless conflict of presumption of law. (5) That there may arise a presumption that every man in his private and official character does his duty, until the contrary is shown, where such a presumption arises at all in a case of character of the instant case, there must be evidence in support of such presumption, such as that decedent was customarily a sober prudent man, of what were his character and habits, and the like; and such presumption does not arise where there is direct evidence, as in the instant case, as to what occurred and what decedent was doing at and about the time of, and the conditions under which, he met his death. In other words, where there was evidence as to the circumstances of the killing, the case was not one to which the presumption was applicable. The jury ought not to be instructed in such terms, as they were instructed in the charge above complained of, as would justify them in acting upon such a presumption, in disregard of the proof in the case, there being facts and circumstances as to the killing, appearing in evidence, as they did appear in the instant case, the evidence showing what the decedent was doing at and before the collision of the trains, and there being no evidence whatever that the decedent was busily engaged in firing the engine and that the collision occurred while he was so engaged, as alleged in plaintiff's petition. (6) Further, because the presumption that every man does his duty is one the application of which is likely to be greatly abused by the jury. 'On it alone the jury might by a blunder always find' in favor of the party charged with fault. On it alone the jury might by a blunder find, as movant contends the jury by a blunder found in the instant case, that the decedent did his duty, and hence was without blame. (7) Because it was error to give said charge to the jury, without any explanation as to what the court meant by the words 'until the contrary is shown,' or how the contrary might be shown; and movant insists that said charge was especially apt to be hurtful to it, and was so hurtful, being given as it was just following the statement, by the court in its charge to the jury, that plaintiff's petition as amended alleged that the deceased was constantly engaged in firing the engine of work-train 383, immediately in front of the fire-box upon said engine, and from which position he was unable to keep a lookout, and could not see." The decision of the Court of Appeals was not erroneous for the reasons assigned.

222

■ The Court of Appeals ruled: "In an action under the Federal employer's liability act for the death of an employee, the proper measure of recovery is the present cash value of the future benefits lost by the beneficiaries, the amount to be arrived at by making due allowance for the earning power of money, under the circumstances. An instruction to this effect was not erroneous as against the railroad company because there may have been no evidence as to the capacity of the plaintiff for investing and caring for money, or as to interest rates in the locality where it might be invested." Error was assigned upon this ruling, on the ground that it had reference to an instruction of the trial judge set out in the eleventh ground of the motion for new trial, and that the decision of the Court of Appeals was erroneous for the reasons set out in the exceptions to the charge complained of in the eleventh ground of the motion for new trial, as follows: "Because no proper basis therefor had been shown in the evidence. There was no evidence showing what was the earning power of money, or what were the local conditions which should not be disregarded. Further, because it is an essential part of the plaintiff's case to prove the facts from which a jury, in a legal way, may estimate such damages, if any, to which the plaintiff may be entitled. It is the law, in cases under the Federal employer's liability act, that the jury, in fixing compensation for deprivation of future benefits, must give due consideration to the present value of money, that is, that a jury can not estimate the amount the beneficiaries might reasonably expect if the deceased had lived out his expectancy by merely adding together the probable annual financial benefits, as shown by the evidence, for the life expectancy of the deceased. The determination of present value of money is not a matter to be left to speculation, or to determination by a jury, without evidence as to the same upon which to base a finding, which should be based upon mathematical calculation itself resting upon evidence introduced in the cause. One of the factors in any such calculation is the interest rate in vogue at the time and under the local conditions when and where the present value of money is to be determined. It is the absolute duty of a party plaintiff to show by evidence what is the earning power of money, so that a proper rate of discount can be used in the reduction to present value. Such a matter can not lawfully be left to the speculation

of juries. In the instant case, it was the duty of plaintiff to prove the method of ascertaining the present value of money and the fundamental factor of the rate of interest (discount) which should reasonably be applied. Plaintiff having failed to introduce this proof, it was error for the court to leave it to the jury to guess at the proper rate of interest to be used and the present value of money. Further, because, in the absence of any evidence as to the earning power of money and of what were local conditions, or as to what plaintiff could obtain by use of the money in the exercise of ordinary diligence, or what was the capacity of plaintiff for investing and caring for money, or that of such advisers as she was able to consult, the local legal rate of interest would properly be applied, and should be applied, in the reduction to present value." The decision of the Court of Appeals was not erroneous for the reasons assigned.

■ The Court of Appeals ruled that ground 8 of the motion for new trial was "controlled adversely to the plaintiff in error by *Western & Atlantic Railroad* v. *Hetzel*, 38 *Ga. App.* 556 (3) (144 S. E. 506). See also Norfolk & Western Ry. Co. *v.* Earnest, 229 U. S. 114, 33 Sup. Ct. 654, 57 L. ed. 1096)." Error was assigned upon this ruling "for the reasons set out" in ground 8 of the motion for new trial, and further "because the said ground 8 is not controlled adversely to the plaintiff in error by the case of *Western & Atlantic Railroad* v. *Hetzel*, 38 *Ga. App.* 556 (3), it being still undetermined either by this honorable court or by the Supreme Court of the United States, whether the decision in headnote 3 of said cited case is a correct ruling." The assignment of error to the above ruling of the Court of Appeals states that the ground 8 of the motion for a new trial complains of a charge: ' "If the jury finds that the decedent, John Lochridge, was guilty of some negligence which contributed to his death, but that the defendant railroad was also guilty of negligence in some or all of the particulars described in the petition, which likewise contributed partly to the injury, and if the damages on that account are diminished by the jury in proportion to the amount of negligence attributable to such employee, the jury will consider this rule as applicable · to the entire charge of the court on the measure of damages," and the complaints of the charge were: "Said charge, in substance and effect, amounted to an instruction to the jury that even though

the jury should find that both defendant and decedent were guilty of negligence causing or contributing to the cause of the latter's death, it would still be a matter of contingency, doubt, or uncertainty, or within the discretion of the jury, as to whether they should or would diminish the amount of damages awarded the plaintiff in proportion to the amount of negligence attributable to the decedent, then the jury would consider such rule as applicable to the entire charge of the court on the measure of damages. Movant insists that under the provisions of the Federal employer's liability act it was the duty of the court to instruct the jury that if they found from the evidence that the defendant and plaintiff's decedent were each guilty of negligence causing or contributing to the injury and death of decedent, it would then be the duty of the jury to diminish the amount of damages awarded to plaintiff in proportion to the amount of negligence attributable to said decedent; and movant insists further that the charge complained of herein not only failed to so instruct the jury, but on the contrary erroneously authorized the jury to understand, or was erroneously likely to mislead them into understanding, that the question of diminishing the amount of damages awarded to plaintiff, in proportion to the amount of negligence attributable to the decedent, would still remain contingent or doubtful or subject to the discretion of the jury, even though they believed, from the evidence, that the death of decedent was caused by the concurrent negligence of the defendant and of said decedent." The decision of the Court of Appeals was not erroneous for the reasons assigned.

■ The Court of Appeals ruled "that 'the verdict for $20,000 was not excessive as a matter of law'." Error was assigned upon this ruling, on the ground that even if it should be held that the deceased did not assume the risk of the collision, the evidence demands the conclusion that he was guilty of gross contributory negligence, and a proper allowance because thereof should have so reduced the amount which plaintiff might otherwise have been entitled to recover that a verdict for $20,000 was so excessive as to indicate gross bias, prejudice, or misapprehension on the part of the jury, in favor of plaintiff. The decision of the Court of Appeals was not erroneous for the reasons assigned.

*Judgment affirmed. All the Justices concur, except Russell, C. J., absent for providential cause.*