**PENNSYLVANIA RAILROAD COMPANY**

v.

**Clarence A. McKINLEY.**

**No. 14219.**

United States Court of Appeals
Sixth Circuit.

Feb. 23, 1961.

Charles F. Clarke, Cleveland, Ohio (James C. Davis, Charles F. Clarke, Jr., Peter D. VanOosterhout, Squire, Sanders & Dempsey, Cleveland, Ohio, on the brief), for appellant.

Craig Spangenberg, Cleveland, Ohio (Spangenberg, Hasenflue & Shibley, Cleveland, Ohio, on the brief), for appellee.

Before McALLISTER, Chief Judge, and CECIL and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

The parties will herein be referred to as plaintiff and defendant, respectively. Defendant, Pennsylvania Railroad Company, by this appeal seeks reversal of a judgment in favor of plaintiff, Clarence A. McKinley, entered upon a jury's verdict in the sum of $150,000. Plaintiff was a watchman employed by the defendant at its public grade crossing at Wooster, Ohio. On March 21, 1956, one of defendant's trains struck a moving van on said crossing. Flying debris from the van struck and seriously injured plaintiff. The action was brought under the Federal Employers' Liability Act. Defendant does not here question liability, nor claim that the verdict was excessive. It asks us to order a new trial upon the following grounds:

1) That because there was no evidence offered as to rates of interest, annuity tables or other data from which the jury could ascertain the present worth of damages for future loss of earning capacity, the trial judge should have instructed the jury that no award could be made therefor.

2) That plaintiff's counsel was allowed, on argument, to give his suggestions as to amounts that should be awarded for pain and suffering calculated on a per diem basis, using a blackboard and placard to record and total his estimates.

3) That the trial judge should have instructed the jury to disregard some medical testimony put in evidence by plaintiff.

We shall discuss these claims of error in the above order.

First. *Lack of proof of present worth.* Neither plaintiff nor defendant offered any evidence suggesting a method of reducing future damages to present worth; no testimony was given as to a rate of interest that could be realized on moneys safely invested; no annuity tables, annuity costs or other like evidence was offered. The trial court did not, by any instructions, explain or direct the use of any specific method of reducing money paid for future damages to its present worth. Defendant made no request for an instruction upon the latter subject, but, at the conclusion of the court's charge, requested him to charge the jury that because there had been no testimony of the above character, no damages for future loss of earning capacity could be awarded.

Here we are not dealing with the question of whether or not a trial judge, with or without a request for instruction, should have advised the jury specifically upon a method of arriving at present worth. At the conclusion of the court's charge, the defendant requested the court to tell the jury that, "no award for loss of future wages could be made because of the failure of plaintiff's evidence to reduce any future wage loss to present value."

Defendant's contention is that in a Federal Employers' Liability Act case, no award may be made for future loss of earning capacity unless there shall have been introduced in evidence, by expert witnesses or otherwise, testimony as to the earning power of money when safely invested, with some evidence as to how the present worth of damages accruing in the future from loss of earning capacity should or could, be determined. Defendant does not define just what evidence was essential, but contends that some evidence which would assist a jury in coming to a reduction of money to present worth should have been before them for their consideration of the subject.

Defendant argues that his position in this regard is sustained by the following decisions of the United States Supreme Court: Chesapeake & O. Ry. v. Kelly,

241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117; Chesapeake & O. Ry. v. Gainey, 241 U.S. 494, 36 S.Ct. 633, 60 L.Ed. 1124; Louisville & N. Ry. v. Holloway, 246 U.S. 525, 38 S.Ct. 379, 62 L.Ed. 867; Gulf, C. & S. F. Ry. v. Moser, 275 U.S. 133, 48 S.Ct. 49, 72 L.Ed. 200; and Western & A. Ry. v. Hughes, 278 U.S. 496, 49 S.Ct. 231, 73 L.Ed. 473.

■■■ He suggests that his contention is further supported by the decision of this court in the case of Thompson v. Camp, 6 Cir., 1947, 163 F.2d 396, certiorari denied 333 U.S. 831, 68 S.Ct. 458, 459, 92 L.Ed. 1116. There can be no dispute that these and other authorities establish the rule that in Federal Employers' Liability Act cases, "when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only." Chesapeake & O. Ry. v. Kelly, supra, 241 U.S. at page 491, 36 S.Ct. at page 632.

In the Kelly case, after expounding the general rule, the court said 241 U.S. at page 491, 36 S.Ct. at page 632,

"We are aware that it may be a difficult mathematical computation for the ordinary juryman to calculate interest on deferred payments, with annual rests, and reach a present cash value. Whether the difficulty should be met by admitting the testimony of expert witnesses, or by receiving in evidence the standard interest and annuity tables in which present values are worked out at various rates of interest and for various periods covering the ordinary expectancies of life, it is not for us in this case to say. Like other questions of procedure and evidence, it is to be determined according to the law of the forum."

Defendant relies upon the quoted language for his contention that the court there decided on the essentiality of some type of evidence referred to. We do not so read that decision. In that case, a Kentucky trial court, which was sustained by the Court of Appeals of Kentucky, refused an instruction which would have told the jury that awards for future damages should be reduced to present worth. Likewise, the trial court had given an instruction to the jury which, fairly read, told them they were merely to aggregate the amounts representing future loss of earning capacity over the years during which such earning capacity would be experienced, and the total of these sums would be the amount to be awarded. Such, apparently, had been the rule in Kentucky. Chesapeake & O. Ry. v. Lang's Adm'r, 1896, 100 Ky. 221, 38 S.W. 503; Chesapeake & O. Ry. v. Kelly, 1914, 160 Ky. 296, 169 S.W. 736.

The case of Chesapeake & O. Ry. v. Gainey, 241 U.S. 494, 36 S.Ct. 633, 60 L.Ed. 1124, was decided on the same day as Chesapeake & O. Ry. Co. v. Kelly, and followed it in reversing another Kentucky case. In the case of Gulf, C. & S. F. Ry. v. Moser, 275 U.S. 133, 48 S.Ct. 49, 72 L.Ed. 200, the trial court in an FELA case attempted to cover the method by which the jury should reduce future damages to present worth. The court, however, refused an instruction which would have told the jury that, "you will make your calculations on the basis of the amount of your award, bearing interest at the highest net rate of interest *that the testimony shows* can be had on money safely invested, and secured as shown by the testimony in this case." The Supreme Court held that the refusal of the proffered request was error. The court did not hold that evidence as to annuity tables, etc., was an essential to the award of such damages.

It is not necessary that we analyze the other decisions of the Supreme Court relied on by defendant. We come to the case of Louisville & Nashville Ry. v. Holloway, 246 U.S. 525, 38 S.Ct. 379, 380. We think it is authority for the proposition that the earlier Supreme Court cases should not be read, as contended by defendant, as adopting a rule that evidence of annuity costs, interest rates, or like testimony, is an essential to recovery. In that case, there was evidence offered by a defendant railroad of annuity tables based upon an interest yield of both six

and seven percent. The trial court refused an instruction which would have told the jury that in reducing money to its present worth, they were required to use the six percent rate—the then legal rate of interest in Kentucky. The court had instructed the jury on damages and, without spelling out a mathematical formula for reducing damages for future loss to present worth, advised the jury that for the wrongful death of her husband a widow was entitled to recover, "such an amount in damages as will fairly and reasonably compensate * * * for the loss of pecuniary benefits she might reasonably have received." Mr. Justice Brandeis held that although a request for a more detailed setting out of the applicable rule would have been required if requested, absent such request, the instruction given was sufficient. He stated,

> "This ruling (referring to the court's charge) did not imply that the verdict should be for the aggregate of the several benefits payable at different times, without making any allowance for the fact that the whole amount of the verdict would be presently paid at one time. The instruction bore rather an implication to the contrary; for the sum was expressly stated to be that which would 'compensate.'"

Having in mind that in the Holloway case just discussed the court sustained the trial court's refusal to give an instruction which would have fixed six percent as the rate of interest to be used in reducing money to its present worth, and sustained a jury's verdict which was arrived at without being restricted to the only evidence offered on the subject, we construe the Holloway case as holding that a jury, unaided by specific testimony as to money values, could themselves, being told that the award should be only money value, properly apply the applicable rule.

In the case before us, the trial judge told the jury that in awarding damages, "the jury will determine the *money value* which will fully, fairly, and justly *compensate* the plaintiff for all such loss of past, present and future earning capacity as you find he has suffered or will suffer as a result of this collision." We think this instruction, absent a request for a more elaborate one, was sufficient under the rule of the Holloway case.

It is clear that under the rulings of Chesapeake & O. Ry. v. Kelly, supra; Chesapeake & O. Ry. v. Gainey, supra; Gulf, C. & S. F. Ry. v. Moser, supra; Thompson v. Camp, 6 Cir., 1947, 163 F.2d 396; Southern Ry Co. v. Neese, 4 Cir., 1954, 216 F.2d 772, standard annuity tables, expert evidence as to earning power of money safely invested, and like testimony would be admissible. No case, however, has been cited to us from the federal or state courts which has held that such proof is essential.

Jurors are presumed to be intelligent people, generally aware, from today's economy and their own experience with it, of the earning value of money when placed in safe investments. While, indeed, more could have been said on the subject, if request had been made, we cannot say that the jury misunderstood the trial judge when he told them that for future loss of earning capacity they were to award only the "money value" of such loss and to award only such sum as would "compensate" for the plaintiff's loss of future earning capacity. They were aware that their verdict would be presently and immediately placing money in the hands of the plaintiff as "compensation" for these future losses. Such was the reasoning of various state court decisions which have directly held that the evidence which the defendant claims was essential here was not a prerequisite to a jury's award of damages for loss of future earning capacity. Western & A. R. R. v. Lochridge, 1929, 39 Ga.App. 246, 146 S.E. 776, affirmed 1930, 170 Ga. 208, 152 S.E. 474, certiorari denied 281 U.S. 762, 50 S.Ct. 461, 74 L.Ed. 1171; Louisville & N. Ry. Co. v. Grizzard, 1939, 238 Ala. 49, 189 So. 203, certiorari denied 308 U.S. 603, 60 S.Ct. 140, 84 L.Ed. 504; Missouri Pac. R. Co. v. Kimbrell, Tex.

1960, 334 S.W.2d 283. These cases were all actions brought under the FELA.

In this case, the plaintiff introduced the standard mortality tables. A contention not unlike that made by defendant here was made by defendant in the case of Western & A. Ry. Co. v. Hughes, 278 U.S. 496, 49 S.Ct. 231, 232, 73 L.Ed. 473. There a recovery was had in an FELA case and error was charged on the assessment of damages. The plaintiff had introduced the mortality tables, and the defendant annuity tables, with values computed at six and seven percent. The railroad's contention was recited, and disposed of, by Justice Brandeis as follows:

"It argues that nominal damages only were recoverable since the plaintiff failed to introduce evidence either as to the proper method of computing the present value of the anticipated benefits or as to the rate of interest which should be applied in doing so. The evidence was ample."

The railroad there charged the insufficiency of the court's instructions on the method of arriving at present worth. The court said:

"If more detailed instructions were desired, it was incumbent upon the railroad to make request therefor. Louisville & Nashville R. Co. v. Holloway, 246 U.S. 525, 38 S.Ct. 379, 62 L.Ed. 867."

We hold that the court committed no error in this regard.

Second. *Alleged improper argument of counsel.* In his argument to the jury, plaintiff's counsel gave his estimate as to the reasonable amount that should be awarded for pain and suffering, past, present and future. In so doing, he suggested a per diem figure for pain suffered at various periods of time, breaking it down into pain endured immediately following the accident, during the period of hospitalization, and pain experienced at other times, and suggested an overall award of damages for future pain and suffering. He suggested an annual amount to be awarded for future damages which was to cover loss of earning capacity and pain and suffering. He recorded his suggestions of awards to be made for pain and suffering and loss of earning capacity upon a blackboard during his opening argument, and totalled these amounts. In his closing argument, he used placards containing the same figures. Timely objection made to such method of argument was overruled. Defendant did not request the trial judge to give the jury any cautionary instruction as to their consideration of counsel's argument in this regard, nor to advise them that the blackboard and placards were not exhibits and that counsel's argument was not evidence.

The propriety of the type of argument made by plaintiff's counsel in this case has been the subject of discussion in various Law Journals, and there is serious conflict between the decisions of the state courts that considered the subject.

Much of the discussion has been precipitated by the decision of the Supreme Court of New Jersey in Botta v. Brunner, 1958, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331. The Botta rule followed some earlier decisions which forbade the doing of what plaintiff's counsel did in this case. Since the Botta decision there have been numerous decisions, some approving its rule and others disapproving. Supporting the Botta rule, although not all of them are directly in point, are Warren Petroleum Corp. v. Pyeatt, Tex.Civ.App.1955, 275 S.W.2d 216; Henne v. Balick, 1958, 1 Storey 369, 51 Del. 369, 146 A.2d 394; Certified TV & Appliance Co. v. Harrington, 1959, 201 Va. 109, 109 S.E.2d 126; Faught v. Washam, Mo.1959, 329 S.W.2d 588. Cases not following the Botta rule, and which generally should be considered as holding that reversible error was not committed by allowing the type of argument employed by counsel in this case are: Haycock v. Christie, 1951, 101 U.S.App.D.C. 409, 249 F.2d 501; Kindler v. Edwards, 1955, 126 Ind.App. 261, 130 N.E.2d 491; Four-County Electric Power Ass'n v. Clardy, 1954, 221 Miss. 403, 73 So.2d 144, 44 A.L.R.2d 1191; J. D.

Wright & Son Truck Line v. Chandler, Tex.Civ.App.1950, 231 S.W.2d 786; Seaboard Airline R. Co. v. Braddock, Fla. 1957, 96 So.2d 127; Kimbell v. Noel, Tex. Civ.App.1950, 228 S.W.2d 980; Etna Oil Co. v. Metcalf, 1944, 298 Ky. 706, 183 S.W.2d 637, 639; Flaherty v. Minnesota & St. Louis Rly. Co., 1958, 251 Minn. 345, 87 N.W.2d 633, 635; Boutang v. Twin City Motor Bus Co., Minn.1956, 248 Minn. 240, 80 N.W.2d 30, 39; Texas & N. O. R. Co. v. Flowers, Tex.Civ.App.1960, 336 S.W.2d 907, 916, 917; Ratner v. Arrington, Fla.App.1959, 111 So.2d 82, 89; Clark v. Hudson, 1956, 265 Ala. 630, 93 So.2d 138; McLaney v. Turner, 1958, 267 Ala. 588, 104 So.2d 315; Johnson v. Brown, Nev.1959, 345 P.2d 754; Jones v. Hogan, Wash.1960, 351 P.2d 153; Olsen v. Preferred Risk Mutual Ins. Co., 1960, 11 Utah 2d 23, 354 P.2d 575; Miller v. Loy, 1956, 101 Ohio App. 405, 140 N.E. 2d 38.

■■ Briefs of counsel suggest that in our decision of the instant appeal we must choose between the so-called Botta rule and those authorities which appear to approve what was done by plaintiff's counsel in this case. It is urged that from this choice we must fashion and adopt for this court a rule of practice that will control trials that follow our decision here. We decline to do so. Although defendant's motion for a new trial averred that the verdict was excessive, no such claim is made on this appeal. We, therefore, find it unnecessary to announce a procedural blueprint to be followed in all future trials. The jury's verdict was indeed a large one, but the judge who presided at the trial and who heard the evidence did not find it excessive. Control of the conduct of counsel so as to keep it within the limits of legitimate advocacy is primarily the duty and responsibility of the trial judge. We will not find error in his discharge of such duty unless we are persuaded that what he did, or failed to do, in matters within his discretion resulted in a miscarriage of justice or deprived one of the parties litigant of a fair trial. Many of the cases which have dealt with the

claimed impropriety of an argument such as was made in this case have held that whether to allow or forbid dealing with damages for pain and suffering in the manner employed by plaintiff's counsel here was a matter within the discretion of the trial judge. Haycock v. Christie, supra; Ratner v. Arrington, supra; Clark v. Hudson, supra; McLaney v. Turner, supra; Johnson v. Brown, supra; Jones v. Hogan, supra; Olsen v. Preferred Risk Mutual Ins. Co., supra; Miller v. Loy, supra. In some of these cases, the appellate court said that a defendant such as the appellant here would be entitled, upon request, to have the trial judge give a cautionary instruction advising the jury that the per diem estimates and blackboard computations were not evidence nor exhibits, but were merely the argument of counsel. No such request was made by the defendant in this case.

The case of Drlik v. Imperial Oil, Ltd., D.C., 141 F.Supp. 388, 394, affirmed sub. nom., Imperial Oil, Ltd. v. Drlik, 6 Cir., 1956, 234 F.2d 4, 11 is cited by plaintiff as authority for the propriety of his argument. The point here involved was not there directly involved. It was an admiralty case tried before a district judge without a jury. The district judge's opinion detailed the method employed by him in awarding damages for pain and suffering. He used a per diem figure for various periods involved. This court in affirming the judgment, while stating that it did not adopt the method employed by the district judge as a rule of law for the proper determination of damages for pain and suffering, stated:

"In our opinion, it was not an arbitrary or unreasonable approach to the problem presented and its application was so adjusted in the present case as to be consistent with the evidence and to reach a result which does not appear to us to be manifestly unjust."

There, indeed, may be situations where argument such as was made here could, and should, vitiate a plaintiff's verdict. In this case, the evidence of defendant's liability was strong. No evidence was

offered by defendant to contest plaintiff's claim as to the nature or character of his injuries or their permanent effect on him, both as to his earning capacity and as to pain, past and prospective, which was, and in the future will be, endured by him. The evidence given by plaintiff's medical experts was not challenged by doctors who examined plaintiff on defendant's behalf. On the blackboard and placard used by counsel, the figures representing pain and suffering and loss of wages up to the time of trial were totalled to $27,900. An amount for future pain and suffering and loss of wages of $7,500 for each of 32 years of expectancy was totalled to $240,000, and the two figures were totalled to $267,900. Alternate computations came to $187,900 and $254,400. There was one mathematical error in these latter totals, although the error resulted in a lower figure than the underlying figures called for. The jury's verdict was $150,000. We will not reverse the judgment entered because of the style and content of counsel's argument.

Third. *Medical testimony.* The plaintiff suffered severe, permanent and painful injuries, and from the testimony the jury could find that the plaintiff was permanently incapacitated from regular and gainful employment, and would continue to experience the pain described by him. Among other consequences of the plaintiff's injuries is his claim that his right leg is weak and upon use develops pain, that he has cramps at night, that he experiences a loss of sensation and is unable to stand on the right leg for long periods of time. He described a condition in the right leg which has reduced the healing power of that leg from the ordinary scratches and bruises of everyday life. There was ample evidence of severe fractures and general trauma to both of plaintiff's legs, with some permanent crippling and deformity. There was testimony of damage to the soft supporting structures of the right knee joint. A medical expert gave his opinion that the consequences of the trauma to his right leg, including the knee joint, would be permanent and progressive. The doctor described the man's disability as being of a "high degree" and that his disability was permanent. On being examined concerning the physiological and medical reasons for the symptoms that the plaintiff was experiencing in his right knee, especially with relation to the lack of healing power, the doctor stated that considering the serious degree of displacement of the fragments of his right femur, such situation suggested to him the distinct possibility of plaintiff having some vascular disturbance which could account for the symptoms, even though the doctor could not actually demonstrate the loss of pulsation in the vessels in the leg. In accounting for the sensory changes in the lower right leg of the plaintiff, tingling sensations experienced, and the pain back of the plaintiff's right knee, the doctor stated that the cramping which had been described was highly suggestive of circulatory disturbance, that the pain over the outside of the calf was most suggestive of nerve difficulty, although it could also be attributed to a vascular condition. Being asked which was more probable, he stated that he leaned toward the vascular explanation. The error complained of here is not that there was insufficient medical evidence from which the jury could conclude that the pain and disability in plaintiff's right knee was a consequence of the accident, but merely that the doctor's statement as to possibilities and probabilities was not evidence that could be considered by the jury. No objection was made to the evidence when it was received. Defendant, however, requested the court to charge the jury that they should disregard the doctor's testimony above referred to.

The medical evidence which defendant says the jury should have been told to disregard was really a doctor's discussion of the likely physiological reasons for the symptoms which followed as a consequence of the serious trauma to plaintiff's right leg and knee joint. From a fair appraisal of the testimony in question, it is evident that the doctor was not speculating as to whether the complained of symptoms were caused by the

accident, but was merely relating these symptoms to what had happened to the bones and supporting soft tissues in the initial trauma and in the subsequent processes of medical and surgical care. We do not consider that error was committed in the court's refusal of the requested instruction.

The judgment is affirmed, with costs to appellee.