**John A. RUSH, Plaintiff-Appellee,**

**v.**

**CARGO SHIPS & TANKERS, INC., Defendant-Appellant.**

**No. 355, Docket 29972.**

United States Court of Appeals Second Circuit.

Argued April 28, 1966.

Decided May 20, 1966.

George J. Engelman, New York City, for plaintiff-appellee.

Edwin K. Reid, New York City (Howard M. McCormack, and Zock, Petrie, Sheneman & Reid, New York City, on the brief), for defendant-appellant.

Before SMITH, KAUFMAN and FEINBERG, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Cargo Ships & Tankers, Inc., owner of the S.S. Adolph Sperling, appeals from a judgment in favor of John A. Rush, a seaman aboard that ship, on his claim for negligence and unseaworthiness, after trial by jury before Judge Sugarman. We find no error and affirm the judgment.

Rush was injured after he slipped or jumped from the side of the ship to the dock at Swan Island, Oregon, shortly after the ship had arrived from Singapore. According to Rush, he was told to jump to shore by the mate or boatswain, to hook up a shore gangway. He climbed over the rail, and onto a ledge used to protect the ship's gangway, and slipped on some substance, probably garbage, and fell onto the dock, a distance of six feet. Frequently garbage from the galley was thrown over at that point. Rush injured both heels, was hospitalized with casts on both legs for some time, and complained of pain in walking or standing for prolonged amounts of time. He brought suit under the Jones Act, 46 U.S.C. § 688, and for unseaworthiness, asking damages of $48,800, of which $41,150 was for past and future pain and suffering. The jury awarded him $45,-107.

Appellant first claims that its motions for a directed verdict and for judgment notwithstanding the verdict should have been granted. The District Court properly denied these motions. Plaintiff testified that either the mate or boatswain said, "A couple of you men jump down on the dock and hook up the gangway," when he was three feet from the mate and boatswain, and the nearest any other seaman was from them was six feet. Although Rush also described this purported order in other, possibly conflicting terms, the jury was free to believe the version just described. Seaman Bean testified that he examined the ledge, and saw some skid marks in scum there, and that the galley often threw garbage over the side there. Deck Engineer Chuckel testified that he heard the mate give an order saying "one of you fellows get on the dock," or words to that effect, and that at that time Rush was about one foot from him, and he was two to three feet from the mate. He considered the order "foolish." The mate testified that he gave no order to jump, rather that he told the boatswain to lower an aluminum ship's ladder, and let a couple of men go down it to the dock and rig the shore gangway. He stated that when Rush landed, the aluminum ladder was already lowered, and one man, Richardson, had just then arrived on the dock. Plaintiff's witnesses, however, said that the aluminum ladder was lowered some time after Rush jumped or fell. Defendant's witness Burton, the Immigration Officer, testified that he heard no order to jump, and that when Rush landed there was no ladder or gangway out. And the Quarantine Officer, Stanley, testified that he heard no order to jump.

■ All this merely created a number of factual issues for the jury, the resolution of which went against defendant. The jury could have found a negligent order, and the injury a proximate result of it, rather than of any scum or garbage on the ledge. On the other hand, the jury could have found that it was not an improvident order and that it would be a proper order for a somewhat unusual method of egress, that there was scum or garbage, and that therefore the ship was unseaworthy. There was more than enough evidence to get to the jury on the Jones Act claim, in view of the near scintilla test for going to the jury under that Act, Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 523, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957), and there was enough evidence of unseaworthiness.

■ Next, appellant argues there was error in refusing certain requests to charge. The first was, in connection with the negligence issue, that "When the plaintiff boarded defendant's vessel, he accepted all the various and well-known risks of his calling." The Court did charge that while it was defendant's continuing duty to use ordinary care,

"this does not mean, of course, that the employer is a guarantor or insurer of the safety of the place to work." A charge virtually identical to the one requested here was made and permitted in Roberts v. United Fisheries Vessels Co., 141 F.2d 288 (1 Cir.), cert. den. 323 U.S. 753, 65 S.Ct. 81, 89 L.Ed. 603 (1944), and in Myers v. Isthmian Lines, Inc., 282 F.2d 28 (1 Cir. 1960), cert. den. 365 U.S. 804, 81 S.Ct. 469, 5 L.Ed.2d 461 (1961). It is correct that a seaman "assumes the risk" of his calling, even though "assumption of risk," a quite different matter, see Tiller v. Atlantic Coast Line, 318 U.S. 54, 68–69, 63 S.Ct. 444, 87 L.Ed. 610 (1943) (concurring opinion), is no defense in a Jones Act suit, Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939). But it is not error to refuse the charge requested here. That an employee "accepts" or "assumes" the "ordinary" or "various and well-known" risks of his calling means that an employee injured as a result of being exposed to a risk not avoidable by the employer's *due care*, cannot recover for negligence. This being true, and since negligence and due care were comprehensively treated in the charge, appellant's requested charge was unnecessary. Furthermore, it might have confused the jury, because the jury might have believed that the seaman was under a duty to disobey a negligent order, i. e., that he assumes the risk of obeying orders. Compare Klimaszewski v. Pacific-Atlantic S.S. Co., 246 F.2d 875, 877 (3 Cir. 1957).

█ The second request, the denial of which is asserted as error, was that the court emphasize that negligence, unlike unseaworthiness, depended on notice or knowledge. In our view, the lengthy treatment of negligence, charged in terms of ordinary or due care and the prudent man, was adequate, especially since by contrast the Court charged as to unseaworthiness that it "does not in any way depend upon reliance or fault or blame" and that "the shipowner is liable * * * even though [he] may have had no notice or knowledge."

█ Finally, appellant suggests that it was reversible error when the court refused to charge the jury to ignore plaintiff's counsel's argument concerning a unit of time or per diem measurement of damages for pain and suffering. Despite the fact that the great weight of authority adopts a flat rule, either approving or disapproving such argument, see the cases collected in Johnson v. Colglazier, 348 F.2d 420 (5 Cir. 1965), we are unwilling to adopt such a rule. See Pennsylvania R. Co. v. McKinley, 288 F. 2d 262 (6 Cir. 1961). We do not necessarily agree, however, with that language of *McKinley* which suggests that the appellate court will reverse only if there resulted "a miscarriage of justice or deprived one of the parties litigant of a fair trial." 288 F.2d at 267.

We do hold that under the circumstances of this case as disclosed by the record before us, it was proper to deny the request. While the argument itself was not reported, and therefore is not before us, a circumstance we regret, there is no suggestion that there was an improper appeal to passion and prejudice other than the bare words used. Furthermore, as the trial judge noted, plaintiff's counsel indicated that his figures were only suggested, that the jury might find them too high or too low, and that it was the jury's determination that controlled.

We have examined appellant's other points, and find them to be without merit.

*Affirmed.*